Robert W. PLASTER and Mary Jean Plaster, Plaintiffs-Appellants,

v.

LEBANON SPECIAL ROAD DISTRICT OF LACLEDE COUNTY, A Public Corporation, Defendant-Respondent.

No. 11704.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 22, 1981.

David Donnelly, Donnelly, Baldwin & Wilhite, Lebanon, for plaintiffs-appellants.

Jack L. Miller, Lebanon, for defendant-respondent.

BILLINGS, Judge.

Suit for specific performance or in the alternative for damages for breach of contract. Plaintiffs, husband and wife, were owners and developers of a subdivision and claimed defendant, a special road district organized under Chapter 233, RSMo 1969, had agreed to pave a road from a nearby highway and roads within the subdivision. Trial was to the court and judgment was entered for defendant on both counts of plaintiffs' petition. We affirm.

Our review of this bench trial is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we are not to disturb the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. There is substantial evidence that the Board of Commissioners made no agreement as alleged by the plaintiffs and the trial court did not erroneously declare or apply the law.

Plaintiffs' petition alleged, inter alia, "That plaintiffs agreed to prepare the roadways in said subdivision to certain spec-

ifications of defendant and to convey the same to Laclede County, Missouri, for use as public roadways and defendant agreed to pave the same with a bituminous surface during the 1977[1] paving season for the consideration of Seventy Cents per running foot of said roadways."

The Lebanon Special Road District of Laclede County, defendant herein, was organized pursuant to Chapter 233, RSMo 1969. As such it was a body corporate and possessed the usual powers of a corporation for public purposes. § 233.025. The governing authority of the district was vested in a Board of Commissioners [§ 233.070] composed of three individuals [§ 233.040]. One commissioner served as chairman of the Board and another as clerk, the latter having the statutory duty of keeping "full and accurate record of the proceedings of the board...." § 233.050. By § 233.065 the Board was required to meet once a month at stated times to consider authorized business and called meetings could be held for specified matters. Other statutes found in Chapter 233 spell out the Board's powers and duties in conducting the business of the road district.

There was no evidence that the Board ever discussed the blacktopping of the roads at a regular monthly meeting or a special call meeting. No minutes or records of the Board were offered as evidence in the case. The chairman testified that he had several telephone conversations with plaintiff Robert W. Plaster about (1) the work to be done on the roadways in the subdivision by plaintiffs before the roadways would be accepted by the district and (2) that *he* had agreed that the roads would be blacktopped for plaintiffs for seventy cents per running foot and thereafter the other two commissioners agreed to this proposal. The other two commissioners testified that all three members of the Board had inspected the roadways and agreed to accept them as part of the district's roads[2] but stated they at no time ever agreed to blacktop the roadways in question. Furthermore, the two commissioners stated the district did not approve any paving projects unless all three commissioners were in agreement.

A Memorandum of Judgment filed by the trial court is as follows:

"The Court upon reviewing the exhibits and evidence presented in trial finds that the Lebanon Special Road District No. 1 was organized under Chapter 233 of the Revised Statutes of Missouri and that the roads in question lie within the boundaries of the Road District consisting in part of roads through the Rockwood Estates subdivision owned by Plaintiffs.

The Court finds from the evidence that the business of the Road District is supervised by three commissioners appointed to three year terms.

There was testimony from former commissioners that business was conducted by the three commissioners and the practice was for all three commissioners to agree upon work to be done or commit the road district to do work for individuals on roads that had been taken into the system of roads within the boundaries of the district.

The Court finds from the evidence and from the testimony of Mr. Alvin Burney that Mr. Burney discussed with the Plaintiff, Robert Plaster, the requirements of building roads and the standards expected before the commissioners would accept

1. The plat of the subdivision was recorded August 13, 1976, and dedicated the roadways shown thereon to public use. By plaintiffs' right-of-way deed filed for record October 13, 1977, all of the streets of the subdivision were quit-claimed to Laclede County.

   According to a commissioner who took office in February, 1978, and testified at trial, the defendant district was "voted out" in the fall of 1978. This suit was filed in September, 1978, and trial was held in October, 1979. The pleadings of the parties make no mention of whether or not the district had in fact been dissolved pursuant to § 233.160 and, if so dissolved, the

attendant questions which would necessarily follow.

2. § 233.080 provides: "Said board shall make and keep on file with the clerk of the board and the clerk of the county court correct plats of all the roads in its district, and duly sectionalized maps of such district, and such sections duly subdivided." The record is silent as to whether the roads in question were incorporated in the district's plats after the three commissioners viewed the subdivision roads and agreed to accept them.

the roadways into the road system of the Lebanon Special Road District No. 1.

Mr. Burney went to the Rockwood Estates subdivision and viewed the roads with the two commissioners who were then serving with him, Mr. Vernie Smith and Mr. Roy Harrill at the time Plaintiff, Robert Plaster, advised him that he had completed the road work necessary to meet the District's standards for acceptance by the District.

Mr. Burney testified that the three commissioners agreed that the roadways were in compliance with their required specifications and the three commissioners agreed to accept them into the system.

Thereafter Mr. Burney had further discussions with the Plaintiff, Robert Plaster, and Mr. Burney agreed that the Road District would pave the road with the Road District supplying the labor and materials, and Plaintiff, Robert Plaster, to reimburse the District for the materials only at the rate of $0.70 per running foot for a 20 foot wide chip-and-seal road surface.

Testimony from various witnesses showed a pattern of operation by the commissioners that all three would agree and commit the road district to do paving for various owners without any agreements being reduced to writing.

From the testimony of Defendant's witness, Vernie Smith, who was as mentioned before, one of the commissioners with Mr. Burney, the Court finds that Mr. Smith did go to the site with the other two commissioners to inspect the roads and did agree to accept the roads of Rockwood Estates into the Road Districts system of roads.

Vernie Smith testified that he did not at any time agree at the request of Plaintiff, Robert Plaster, or of Commissioner Burney to commit the District to chip-and-seal Plaintiffs' subdivision roads.

Defendant's witness, Commissioner Roy Harrill, also testified that he went to the Rockwood Estates subdivision and inspected the roads along with Mr. Burney and Mr. Smith and agreed with them to accept the roads into the system.

Mr. Harrill also testified that he did not at any time agree to commit the District to Plaintiffs' subdivision roads.

Testimony from Mr. Plaster and Mr. Burney was that the agreement was entered into either in late 1976 or early 1977 and upon recall of Mr. Burney to the witness stand at the Court's request, Mr. Burney stated that the agreement was entered into after the roads were inspected by the three commissioners and accepted into the systems which would be in early 1977.

Therefore the Court finds that there was not an agreement by all three commissioners to bind the road district to do the paving as negotiated with Mr. Burney by the Plaintiff, Robert Plaster.

The Court finds that Mr. Burney failed to communicate his discussions with Mr. Plaster to the other two commissioners and the other commissioners never orally or in writing committed the road district to do the paving as requested by Plaintiff, Robert Plaster."

▇ Plaintiffs' contention that the Board's chairman was authorized to legally obligate the district to his telephonic agreements with plaintiff Robert Plaster is unsound and flies in the face of the statutes governing special road districts. A cursory reading of the statutes clearly show that a *Board*, composed of three commissioners, is entrusted with governing the business of the district and that such business is to be transacted by the *Board* at monthly or specified call meetings with records reflecting *Board* action as authorized by law. This is in keeping with the general law governing bodies of this type which mandates that a governing body can act only as a body at authorized meetings and that the individual action of any member or the unofficial acts or agreements of all or a part of the members are ineffectual and without binding force. 62 C.J.S. Municipal Corporations § 391 (1949); 39A C.J.S. Highways § 156 (1976); 56 Am.Jur.2d Municipal Corporations, Etc. 155 (1971).

▇ There is an additional reason for affirmance of the lower court's judgment. The defendant, a special road district, is a

municipal corporation within the meaning of § 432.070, RSMo 1978. *Hawkins v. Cox*, 334 Mo. 640, 66 S.W.2d 539 (1933). In pertinent part this statute provides: "No . . . municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law . . . ; *and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto . . .*" (emphasis added) Consequently, contracts entered into on behalf of the district must be in writing in order to be valid. *Hawkins v. Cox*, supra, and cases cited at 66 S.W.2d 544.

Apparently anticipating the foregoing problem, plaintiffs boldly assert the alleged contract "need not be in writing to be enforceable" and refer us to a decision of this court in *Bixler v. Special Road Dist. No. 1, Newton County*, 156 S.W.2d 950 (Mo.App. 1941). A review of that case will demonstrate: (1) the court recognized and found itself "heartily in accord" with *Hawkins* and other cited cases following *Hawkins*; (2) the minutes of the Board showed employment of an individual at an hourly rate for certain work and there was substantial evidence of the hours claimed by the employee; (3) because what is now § 233.070 specifically authorized the Board to "employ hands at fixed compensations," the section which is now § 432.070 was not applicable. *Bixler* does not alter the fact that the alleged contract under which plaintiffs were claiming was, by the terms of § 432.070, required to be in writing.

Here, the alleged agreement arose from conversations between plaintiff Robert Plaster and one of the road district's commissioners. Even if all three commissioners had orally agreed to the paving project plaintiffs could not, by reason of § 432.070, prevail in this suit. As noted, the road district is a municipal corporation and the purpose of the statute is to protect the public against the unauthorized acts of its officers. *Bride v. City of Slater*, 263 S.W.2d 22 (Mo.1953). All persons are charged with knowledge of the powers of municipal corporations, the authority of their officers, and the manner prescribed by statute for the exercise thereof. *Grauf v.*

*City of Salem*, 283 S.W.2d 14 (Mo.App. 1955). The alleged agreement would have obligated the road district to an expenditure of public monies. Section 432.070 mandates any such agreement be in writing and pursuant to statutory procedures governing defendant road district. Furthermore, theories of estoppel (advanced by plaintiffs in this appeal), ratification, or implied contract cannot be advanced to circumvent the statute. *Fleshner v. Kansas City*, 348 Mo. 978, 156 S.W.2d 706 (1941); *Grauf v. City of Salem*, supra, 283 S.W.2d 14.

The judgment is affirmed.

MAUS, C. J., PREWITT, P. J., and STOCKARD, Special Judge, concur.